UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY OLIN,

                                        Plaintiff,

                                                                    DECISION AND ORDER

                                                                    18-CV-6006L

                    v.

THE ROCHESTER CITY SCHOOL DISTRICT,
JEROME A. TRIPPE, MATTHEW E. SEEGER,
GERALD A. CUTAIA, and THOMAS P. KEYSA,

                                        Defendants.

_____


        Plaintiff, an employee of the Rochester City School District (the "District"), brings this

action against the District and four of its employees. Plaintiff alleges that the District and the

individual defendants subjected her to gender-based and disability-based discrimination and

retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq.

("Title VII") the Americans With Disabilities Act of 1990, 42 U.S.C. ¶11201 et seq. ("ADA"), and

the New York State Human Rights Law, N.Y. Exec. Law §290 et seq. ("NYHRL").

        Defendants now move for summary judgment dismissing the complaint (Dkt. #81). For the

reasons that follow, defendants' motion is granted in part, and denied in part.

                              **FACTUAL BACKGROUND**

        Plaintiff was first employed by the District in or about March 2000 as a Maintenance

Mechanic in the Plant Maintenance group, a subdivision of the District's Facilities Department,

and continued in that position for approximately 17 years. Around April 2014, another

Maintenance Mechanic, individual defendant Jerome A. Trippe ("Trippe"), was promoted to the

position of Electrical Foreman, and became plaintiff's direct supervisor. Trippe was supervised by defendant Matthew E. Seeger ("Seeger"), Supervisor of Plant Maintenance, and Seeger was supervised by individual defendant Thomas A. Keysa ("Keysa"), Director of Facilities. Individual defendant Gerald Cutaia ("Cutaia") was employed as a Senior Personnel Analyst and Assistant Director of Human Resources in the District's Human Capital Department ("Human Capital"), and his job duties included investigating complaints by and against employees, and engaging in dispute resolution efforts and disciplinary actions.

It is undisputed that during the relevant period – comprised of the 2014-2015 and 2015-2016 school years – plaintiff was the only female Maintenance Mechanic employed by the District in her department. Plaintiff alleges that after Trippe became her supervisor, she was unfairly singled out, scrutinized, harassed, and disciplined, due to her gender, and was ultimately demoted as a pretext for discrimination and/or retaliation.

Plaintiff avers that she met with Trippe and Cutaia in or around September 2014, and raised concerns about how Trippe was treating her. Plaintiff alleges that during the meeting, Trippe yelled at her. (Dkt. #85 at 14). Cutaia testified that on February 4, 2015, Trippe complained to Cutaia that plaintiff was being argumentative with him. (Dkt. #81-10 at ¶10). After investigating the matter and conferring with Seeger, Human Capital issued a verbal reprimand to plaintiff on March 23, 2015 for "fail[ing] to keep [Trippe] informed of issues she was having completing her work" on five specific dates. This represented the first disciplinary incident in plaintiff's 15-year tenure with the District. (Dkt. #81-10 at ¶¶2, 11; Dkt. #81-23).

In or before September 2015, plaintiff complained to Cutaia that she was being subjected to a "hostile work environment" by Trippe. She alleged that Trippe was treating her rudely, singling her out for criticism, assigning her jobs that were the least desirable and that kept her

isolated from her coworkers, and applying a different and more onerous set of expectations to her work than he applied to her [all-male] coworkers. (Dkt. #85 at ¶9; Dkt. #86-4 at 110:21-111:13). Cutaia testified that he understood the complaint to be a "hostile work environment" complaint, but did not investigate it as such or issue any formal findings. (Dkt. #81-13 at 1, 2). Rather, Cutaia "kept meeting back and forth with [plaintiff] and Jerry Trippe and [Seeger] to try to resolve the conflict between [plaintiff and Trippe]." (Dkt. #86-4 at 111, 114). Cutaia ultimately recommended that Trippe provide plaintiff with a performance improvement plan ("PIP") that would serve the dual purpose of addressing plaintiff's concerns that expectations were not being clearly communicated, and ensuring that those expectations were being uniformly applied to all employees within the department. (Dkt. #86-4 at 116-17). Although the record indicates that a PIP was eventually prepared by Trippe and Seeger, there is no evidence that it was ever presented to plaintiff, and plaintiff denies having ever received it.

Eventually, a meeting was held between Cutaia, plaintiff, and her union representatives from the Board of Education Non-Teaching Employees ("BENTE"), at which plaintiff continued to express concerns about Trippe's expectations and micromanagement. (Dkt. #81-10 at ¶12). Plaintiff alleges that she also communicated with Trippe's own supervisors, including individual defendant Thomas P. Keysa ("Keysa") concerning specific workplace issues with Trippe. For example, a printer that plaintiff needed to use was moved out of her reach, and Trippe refused to relocate it. With Keysa's intervention, the printer was moved closer to plaintiff, and that matter was resolved. (Dkt. #85 at 15-16). Nonetheless, constant difficulties between Trippe and plaintiff – which defendants characterize as performance issues on plaintiff's part, and plaintiff characterizes as harassment on Trippe's part – persisted.

Trippe stated that in the late winter or early spring of 2016, he was tipped off by an unnamed custodian that plaintiff had left the job site with a former employee for a lunch break that exceeded the department's 30-minute allotment. (Dkt. #81-25 at ¶22). (Plaintiff disputes this, and alleges that as part of an ongoing pattern of attempts to find fault with her, Trippe unilaterally commenced an investigation into her lunch breaks.)

Trippe raised the matter of plaintiff's allegedly excessive lunch breaks with the District's Office of Safety and Security ("OSS") in or around early March 2016. According to the District, OSS director Lori Baldwin ("Baldwin") instructed Trippe to assemble relevant proof, including video surveillance recordings, GPS records, and time logs. A full investigation by OSS followed, during which plaintiff admitted to taking lunch breaks longer than 30 minutes, but stated that her male coworkers routinely engaged in precisely the same behavior, and were not being investigated or disciplined. Upon completion of her investigation, Baldwin determined that the allegation that plaintiff's lunch breaks had regularly been exceeding the 30-minute limit was "sustained."[1] In response, Cutaia recommended that plaintiff's employment with the District be terminated.

On July 20, 2016, a discipline meeting was scheduled for the purpose of informing plaintiff and BENTE that the District intended to terminate her employment for theft of time. Plaintiff was unable to attend, so the meeting was postponed, and BENTE requested a meeting to discuss a resolution that would involve a lesser form of discipline instead.

Representatives of BENTE and Human Capital met on August 10, 2016, and negotiated a resolution in lieu of termination, whereby plaintiff would agree to a demotion with a 10% pay decrease, to a position where she would remain onsite for 8 hours per day, with a supervisor directly overseeing her work. BENTE ultimately signed a Memorandum of Agreement to that

---

[1] Baldwin contemporaneously investigated a second allegation by Trippe, that plaintiff was not completing her work assignments in a timely manner. Baldwin found this allegation "unprovable." (Dkt. #81-5 at 7).

effect on or about August 30, 2016, and the District signed it on November 7, 2016. (Dkt. #85 at ¶64). Plaintiff denies that BENTE had the authority to enter into the Memorandum of Agreement on her behalf, and argues that her subsequent compliance with its terms was involuntary. (Dkt. #85 at ¶¶69-70).

On or after July 7, 2016 – the date it was signed by plaintiff, and notarized – plaintiff filed an EEOC charge alleging that Trippe had created "an environment designed to torment" her by "mak[ing] up" onerous "policies that only [plaintiff] had to follow," disciplining her for minor or nonexistent infractions, requiring her to complete undesirable tasks, isolating her from other employees, belittling her in front of others, refusing to discuss or clarify job expectations, denying her training, and misrepresenting her performance to others. Plaintiff alleged that as the only woman in the department, she believed Trippe was singling her out due to her gender, and stated that Trippe's supervisor, Seeger, had been "complicit" in Trippe's conduct. (Dkt. #81-35 at 2-4). On or about August 25, 2016, plaintiff filed a second EEOC charge, alleging that since her initial charge, she had been subjected to retaliation, in the form of a disciplinary investigation into her lunch breaks which resulted in the District's threat to terminate her employment if she did not agree to accept a demotion, while male coworkers who had not complained of discrimination were allowed to continue taking extended lunch breaks. (Dkt. #81-36; Dkt. #85 at ¶¶11-12).

Plaintiff was issued right-to-sue letters on or about October 5, 2017. (Dkt. #81-1 at ¶13, Dkt. #81-37, Dkt. #81-38, Dkt. #85 at ¶13). This action followed.

## DISCUSSION

### I.    Applicable Standard

Summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. A dispute is genuine where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Central Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). In considering a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant: the Court cannot make credibility determinations, weigh the evidence, or draw inferences from the facts. *Id*.

The Second Circuit Court of Appeals has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). At the same time, it is well settled that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)(internal quotation marks omitted).

### II.    Claims of Disability-Based Discrimination in Violation of the ADA and NYHRL

Initially, defendants argue that plaintiff's ADA claims – which allege that she was subjected to discrimination on the basis of a disability, specifically Crohn's disease – are unexhausted and untimely.

The Court agrees. "Under the ADA, which incorporates the filing procedures of Title VII[,] as a prerequisite to suit a plaintiff must file a charge with the EEOC or analogous state agency

6

within 300 days of the alleged act of discrimination." *Geer v. Gates Chili Cent. Sch. Dist.*, 2021 U.S. Dist. LEXIS 243214 at *36-*37 (W.D.N.Y. 2021)(citing 29 U.S.C. §626(d); 42 U.S.C. §12117(a)).

Plaintiff filed two administrative charges with the EEOC in and after July 2016, both alleging gender-based discrimination and retaliation. Neither charge made any mention of Crohn's disease or its symptoms, or asserted any facts suggesting discriminatory action based on disability. Furthermore, plaintiff did not file a notice of claim concerning disability-based discrimination pursuant to N.Y. General Municipal Law §50-e or N.Y. Education Law §3813, which is a prerequisite to the pursuit of a NYHRL discrimination claim.

In short, plaintiff's claims of disability-based discrimination, which were asserted for the first time in her complaint in this action (Dkt. #1, filed January 3, 2018) are unexhausted and untimely, and are accordingly dismissed.

## III.    Gender-Based Discrimination in Violation of Title VII and NYHRL

The Court analyzes Title VII discrimination claims using the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[2]

Initially, plaintiff must make out a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498

---

[2] Discrimination claims under the NYHRL are subject to the same analysis as Title VII claims. *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2012); *Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010). The Court observes that recent amendments to New York law require that a different and more lenient standard be applied to NYHRL discrimination claims accruing on or after October 11, 2019. *See generally Gurley v. David H. Berg & Assocs.*, 2022 U.S. Dist. LEXIS 20546 at *16-*17 (S.D.N.Y. 2022); *Syeed v. Bloomberg L.P.*, 2021 U.S. Dist. LEXIS 205237 at *51 (S.D.N.Y. 2021). However, all of plaintiff's allegations in this matter fall prior to that date, and thus her Title VII and NYHRL claims must be considered under the same standard, and will rise or fall together.

(2d Cir. 2009). "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) (internal quotation marks omitted).

If the plaintiff successfully establishes a prima facie case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (internal quotation marks omitted). In so doing, the defendant employer "need not persuade the court that it was actually motivated by the proffered reason." *Delaney v. Bank of Am. Co*rp., 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks omitted).

If the employer meets that burden, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). Stated differently, the plaintiff has the burden to show "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).

## A.    Discriminatory Demotion

Here, the first three elements of plaintiff's prima facie case – that plaintiff is a member of a protected class, that she was qualified for her position, and that she was subjected to an adverse employment action in the form of a demotion, which was negotiated by BENTE as an alternative to termination – are undisputed.[3] Given the minimal threshold for demonstrating circumstances

---

[3] Plaintiff also alleges that an oral reprimand given to her in or around March 2015, and a performance evaluation that rated her "below average" in some categories, were adverse employment actions. However, there is no evidence that either of these actions had any material adverse effect on the terms and conditions of plaintiff's employment, or resulted in any change in her compensation or responsibilities, and as such, they cannot, by themselves, be considered

that permit an inference of discrimination, the Court finds that plaintiff's testimony that she was the only woman in her department during the relevant period, and evidence that she was singled out for discipline for engaging in conduct that was routinely tolerated in male coworkers, is sufficient to raise an inference of discrimination, for purposes of establishing her prima facie case.

Defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's demotion – specifically, plaintiff's having routinely taken extended lunch breaks, which she admits having done. The Court accordingly turns to the question of whether plaintiff has come forward with evidence sufficient to rebut that reason, by which a reasonable finder of fact might conclude that the reason was pretextual, and that plaintiff's demotion was motivated by gender-based discrimination.

In reviewing the instant motion, the Court observes that it is not the Court's role "to review the correctness of employment decisions or the processes by which those decisions are made." *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009). An employer is free "to hire or fire employees according to its own criteria, so long as they do not include unlawful discrimination." *Velez v. SES Operating Corp.*, 2009 U.S. Dist. LEXIS 106465 at *41 (S.D.N.Y. 2009)(citing *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001)).

It is undisputed that plaintiff was the only woman in her department, which was comprised of some 70 employees, approximately 12-14 of whom were Maintenance Mechanics. (Dkt. #81-1 at ¶20; Dkt. #81-35 at 4). In arguing that the District's reason for demoting her was pretextual, plaintiff avers that her male coworkers routinely engaged in precisely the same conduct for which she was disciplined and demoted – specifically, the taking of extended lunch breaks – and that

---

adverse employment actions within the meaning of Title VII. *See Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019)("a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action").

despite all of their conduct being open, obvious, and well-known to Trippe, none of the men were ever investigated or disciplined.

Plaintiff has submitted evidence, in the form of GPS records, investigation records, and affidavits, in support of this claim. Initially, plaintiff notes that when Baldwin investigated plaintiff's lunch breaks, she did a three-day "spot check" of GPS records for District-owned vehicles, and discovered that at least one other employee, a man, had taken an extended lunch break during the same period. (Dkt. #85 at ¶50). According to Baldwin's notes, she brought that employee's absence to Trippe's attention, and he "advised [Baldwin] at a later time that he had addressed this." (Dkt. #81-5 at 9). The record contains no indication that the other employee was ever reprimanded or disciplined, or that Baldwin made any attempt to investigate the other employee's conduct or to verify that Trippe had in fact "addressed" the issue. When deposed, Trippe testified that he was unable to recall whether he had ever done so.

Plaintiff has also submitted GPS vehicle tracking records for District vehicles assigned to coworkers between February 2016 and May 2016, which showed afternoon trips to the addresses of restaurants and other commercial businesses which were not located near any District job site, and could be reasonably interpreted to represent extended offsite trips at lunchtime. (Dkt. #85 at 24-29).

Furthermore, three current and former Plant Maintenance employees provided affidavits attesting that employees in the department had never been required to clock out for lunch, and that the 30-minute lunch break regulation was a "loose" guideline that was never enforced. They recalled that it was "very common for employees to take longer than 30 minutes for their lunch break," (Dkt. #86-12 at ¶11), and identified at least seven of plaintiff's contemporaneous male coworkers who routinely took lunch breaks in excess of thirty minutes. (Dkt. #85 at 22-23, Dkt.

#86-11, Dkt. #86-12, Dkt. #86-13). Moreover, the affiants testified that prior to becoming foreman, "Trippe was another one of the maintenance mechanics [and he] clearly understood that it was common practice . . . to take a substantial amount of extra time outside of the 30-minute lunch period, because he himself took well over the 30-minutes allotted for lunch on numerous occasions," and because "it was widely understood among the department employees that this was acceptable, Trippe never was disciplined for it." (Dkt. #86-12 at ¶12). *See also* Dkt. #86-13 at ¶8.

According to these employees, even if Trippe's promotion to foreman had caused him to forget his own prior practices as a mechanic, his investigation into plaintiff's lunch breaks and the attendant review of security footage would necessarily have reminded him that "many other employees [besides plaintiff] also routinely took an hour or more for their lunch breaks," and therefore, the affiants did "not understand why [plaintiff] was investigated for her lunch break times while other employees were not." (Dkt. #86-11 at 6). *See also* Dkt. #86-13 at ¶¶12, 14. Indeed, the three attesting Plant Maintenance employees stated that despite extended lunch breaks being commonplace, they were unaware of any employee in the department other than plaintiff ever having been disciplined for taking long lunch breaks, either before or after her tenure. (Dkt. #85 at 30-31, Dkt. #86-11, Dkt. #86-12, Dkt. #86-13).

Defendants disagree that the lunch break rule was selectively enforced against plaintiff, pointing to five other employees between 2014 and 2017 – three male, and two female – who were disciplined for "theft of time." (Dkt. #81-1 at ¶58; Dkt. #81-16; Dkt. #81-17; Dkt. #81-18). These included: (1) "A.C.," a male truck driver who was terminated in 2016 after it was discovered he'd mispresented the amount of time worked by at least 74.5 hours; (2) "T.C.," a male delivery driver who was issued an oral reprimand and counseling memo in 2015 for making repeated personal trips, including to his home, on work time; (3) "P.O.," a male custodian who was terminated in

2017 for misrepresenting time worked by at least 117 hours; (4) "A.M.," a female employee who resigned in lieu of termination after falsifying bereavement paperwork to obtain a 5-day death benefit in 2015; and (5) "M.C.," a female employee who resigned in lieu of termination, after she was found to have falsified paperwork to receive time off for illness. *Id*.

Plaintiff responds that these individuals are not proper comparators: they were employed by other departments in the District, worked under different supervisors, had different time reporting or "clocking out" requirements, and were accused of engaging in affirmative written misrepresentations about the amount of time they worked, or their entitlement to medical or bereavement benefits. In contrast, plaintiff argues, her conduct was entirely consistent with the norms of her department, involved no misrepresentations (written or otherwise), and concerned a far less significant amount of time – by the District's calculation, a total of approximately 27 hours over a period of several weeks – than the alleged comparators.

In arguing that the discipline against her was motivated, at least in part, by gender-based discrimination, plaintiff also points to coworker testimony observing that Trippe "harbored animosity" toward plaintiff in particular, that it appeared he "wanted to get rid of" her, and that he repeatedly "exhibited aggressive or negative behavior" toward her which was not extended to her [exclusively male] coworkers. (Dkt. #85 at 31; Dkt. #86-11 at 5-6; Dkt. #86-13 at ¶14).[4]

Construing all inferences in plaintiff's favor, as the Court must on this motion, I find that plaintiff has produced sufficient evidence to rebut the District's legitimate, nondiscriminatory reason for demoting her. The evidence offered by plaintiff, including GPS records, the District's investigatory records, and testimony by coworkers, is adequate, if credited, to convince a

---

[4] Plaintiff also describes a comment, related to her by a school custodian and attributed to Trippe, that "women don't belong" in the electrical field. Such double hearsay does not constitute "evidence in admissible form," and thus cannot be considered in determining whether she has met her evidentiary burden in responding to the instant motion for summary judgment.

reasonable trier of fact that the lunch break "regulation" was selectively enforced against plaintiff – the only woman in her department – and that this selective enforcement and resulting demotion were motivated by gender-based discrimination. As such, defendants' motion for summary judgment dismissing plaintiff's gender-based discrimination claim is denied.

### B.     Hostile Work Environment

Plaintiff also alleges that she was subjected to a gender-based hostile work environment by Trippe.

To establish a hostile work environment under Title VII or the NYHRL, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(citations and internal quotation marks omitted). The standard contains both "objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

In determining whether a work environment meets the standard, courts must "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Raspardo*, 770 F.3d 97 at 114 (quoting *Harris*, 510 U.S. at 23)).

Plaintiff alleges that Trippe raised his voice to her on multiple occasions, caused her to be orally reprimanded in 2015, assigned her jobs that were more isolating and less desirable than the tasks assigned to male coworkers, micromanaged her work, denied her training opportunities with

respect to school surveillance cameras, refused to discuss issues about which plaintiff needed clarification, was hypercritical of plaintiff's performance, and rendered performance evaluations that found plaintiff's performance "below average" without any explanation or guidance to help plaintiff improve.

Giving plaintiff the benefit of every favorable inference, such allegations are insufficiently severe and/or pervasive to establish an alteration of the terms and conditions of plaintiff's employment, or to create an abusive working environment due to plaintiff's gender. *See Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015)(allegations that plaintiff was subjected to negative statements made in "harsh tones," wrongful reprimands, increased reporting requirements and being left out of meetings, are insufficient to support a finding of hostile work environment); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 2011 U.S. Dist. LEXIS 93868 (S.D.N.Y. 2011)(diminished job responsibilities, exclusion from meetings, being yelled at or talked down to, and increased workload of menial tasks, does not comprise conduct sufficiently severe or pervasive to constitute a hostile work environment), *aff'd*, 488 F. App'x 530 (2d Cir. 2012); *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005)(reprimands and "close monitoring may cause an employee embarrassment or anxiety, [but] such intangible consequences are not materially adverse alterations of employment conditions").

Although plaintiff alleges that Trippe's tone was inappropriately "mean" and that he routinely subjected her work to unfair scrutiny and criticism, "many bosses are harsh, unjust and rude," *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002), and "excessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v. Temin & Co.*, 2021 U.S. Dist. LEXIS 183760 at *23 (S.D.N.Y. 2021)(citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). Here, plaintiff does not identify any sexist or disparaging remarks, threats, physical

interactions, or other egregious conduct by District officials, the individual defendants, or coworkers within her department. The incidents plaintiff describes are not, as a whole, sufficiently severe or pervasive to give rise to a hostile work environment within the meaning of Title VII and the NYRHL. Plaintiff's hostile work environment claim is accordingly dismissed.

## IV.   Retaliation in Violation of Title VII and NYHRL

Plaintiff also alleges that she was disciplined and demoted in retaliation for her internal complaints of discrimination, and/or for her EEOC charges.

In order to establish a retaliation claim, plaintiff must prove that: (1) she engaged in protected activity; (2) about which the alleged retaliator was aware; and (3) she was subjected to an adverse employment action; (4) with a causal connection between the protected activity and the adverse action. *Natofsky*, 921 F.3d 337 at 353 (citing *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)). A causal connection may be shown indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or directly, through evidence of retaliatory animus directed at the plaintiff by the retaliator. *See Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015).

It is undisputed that plaintiff's internal complaints of discrimination, and her pursuit of administrative charges, are protected activities.

Initially, plaintiff contends that she complained about her treatment by Trippe, alleging gender-based disparate treatment and/or hostile work environment, to Cutaia in 2015, both verbally and in writing. (Dkt. #85 at ¶9; Dkt. #86-4 at 110:21-111:13). Although no specific date for such complaints is alleged and the record contains no copy of any written complaint, Cutaia's notes concerning his investigation into allegations of a "hostile workplace" are dated beginning September 9, 2015, suggesting that plaintiff's complaint was made on, or shortly before, that date.

(Dkt. #81-13 at 1-2). The lunch break investigation that led to plaintiff's demotion was commenced approximately six months later, in or around March 2016. (Dkt. #81-5 at 4).

While the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," where temporal proximity is the sole basis upon which causation can be found, the proximity must be "very close." *Farooq v. City of New York*, 2022 U.S. App. LEXIS 6739 at *10 (2d Cir. 2022)(collecting cases, and finding that a five-month gap, standing alone, is insufficient to show causation) *See also Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020)(collecting cases, and noting that the Second Circuit has variously concluded that a five-month lapse could evidence a causal connection, and that a gap of three months did not); *Magnusson v. County of Suffolk*, 2016 U.S. Dist. LEXIS 64897 at *39 (E.D.N.Y. 2016)(six-month gap militates against inferring a causal link), *aff'd*, 690 F. App'x 716 (2d Cir. 2017); *Duckett v. Wal-Mart Stores, Inc.*, 2009 U.S. Dist. LEXIS 31624 at *32 (W.D.N.Y. 2009)(same). Here, there is no evidence of a causal connection beyond temporal proximity, and I find no basis by which a reasonable finder of fact could infer that the investigation into plaintiff's lunch breaks that began in March 2016 was causally connected with her internal complaints of discrimination at least six months before. That claim must accordingly be dismissed.

Plaintiff also alleges that her demotion was undertaken in retaliation for her administrative charges. Although the record does not indicate the filing date for plaintiff's initial EEOC charge, it was signed on or about July 7, 2016 and presumably filed shortly thereafter,[5] since it was

---

[5] Plaintiff alleges that her initial EEOC charge was filed on or about "May 1, 2016, at the earliest, or on or about July 7, 2016, at the latest." (Dkt. #85 at ¶11). It does appear that plaintiff may have begun preparing the charge in May 2016, as it refers to a "continuing violation" extending from March 1, 2015 through May 4, 2016. (Dkt. #81-35 at 2). However, because the charge was not signed by plaintiff, dated, and notarized until July 7, 2016, it manifestly could not have been filed with the EEOC prior to that date. (Dkt. #81-35 at 3).

forwarded to the District by the EEOC and stamped "received" in the District's Human Resources Department on August 8, 2016. By that point, the investigation of plaintiff's lunch times had already concluded, and Cutaia had already recommended plaintiff's termination. (Dkt. #81-35).

The timing of these events cannot be reasonably interpreted to suggest a causal connection between plaintiff's EEOC charges and the District's decision to terminate (or, later, demote) her. While the District was manifestly aware of plaintiff's first administrative charge by August 8, 2016, when it was forwarded to the District by the EEOC, there is no evidence that any defendant was aware of the administrative charge at any earlier time. In fact, the District's investigation findings concerning plaintiff's lunch breaks were forwarded to Cutaia – resulting in his immediate recommendation of termination – on July 8, 2016, just one day after plaintiff's initial administrative charge was signed and possibly filed. (Dkt. #81-15 at 67-68).

Because there is no evidence by which a reasonable finder of fact could conclude that the defendants were aware of plaintiff's initial administrative charge prior to the decision to terminate her employment (which was later modified to a demotion), plaintiff has failed to establish a prima facie case of retaliation with respect to her administrative charges. That claim is accordingly dismissed.

## V.     Claims Against Individual Defendants

Defendants argue that all claims against the individual defendants must be dismissed, because it is well settled that individuals are not subject to liability under Title VII, and individual liability under the NYHRL only extends to those who actively participated in the discriminatory conduct, to individuals who "aided and abetted" such conduct, and to supervisors who actively failed to take remedial measures, despite being informed of the conduct. *See Whipple v. Reed Eye Assocs.*, 213 F. Supp. 3d 492, 495 (W.D.N.Y. 2016). *See also Turley v. ISG Lackawanna, Inc.*,

803 F. Supp. 2d 217, 252 (W.D.N.Y. 2011)("[a] supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation'" in a discriminatory violation).

Plaintiff contends, with respect to her NYHRL claims, that the individual defendants were all operating in a supervisory capacity – with Trippe being plaintiff's supervisor, Seeger and Keysa being Trippe's supervisors, and Cutaia being responsible for investigating complaints of discrimination – and that each of them either perpetuated or failed to remedy the discrimination against her.

With regard to Trippe, plaintiff has offered testimony indicating that he directly engaged in a pattern of disparate treatment against her which was intended to cause – and indeed, did cause – the removal of plaintiff from her position as a Maintenance Mechanic. If credited by a finder of fact, plaintiff's version of events could support a finding of individual liability against Trippe, and to the extent that plaintiff has asserted discrimination claims against him pursuant to the NYHRL, those claims may proceed.

Plaintiff's claims against the other individual defendants must be dismissed. Cutaia was not a supervisor, and his alleged failure to conduct an adequate investigation into plaintiff's complaints of discrimination is not an adequate basis to impose personal liability under the NYHRL. *See Kalola v. IBM*, 2015 U.S. Dist. LEXIS 27444 at *32 (S.D.N.Y. 2015)(NYHRL does not impose individual liability for failure to adequately investigate a claim of discrimination).

With respect to the remaining individual defendants, Seeger and Keysa, plaintiff has alleged only general knowledge of interpersonal difficulties between herself and Trippe, and Seeger's knowledge and approval of the disciplinary reprimands drafted against her by Cutaia. Plaintiff has not produced evidence of any active involvement in workplace discrimination, actual knowledge that gender-based discrimination was occurring or had been complained-of, or failure

18

to investigate any such complaints, on the part of Seeger or Keysa. As such, the claims against them are dismissed.

For the foregoing reasons, plaintiff's Title VII claims against all of the individual defendants, and her NYHRL claims against Cutaia, Seeger and Keysa, are dismissed. Her NYHRL claim against Trippe survives.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment dismissing the complaint (Dkt. #81) is granted in part, and denied in part. Plaintiff's ADA discrimination claims, her Title VII hostile work environment and retaliation claims, her Title VII claims against all individual defendants, and her NYHRL claims against individual defendants Cutaia, Seeger and Keysa, are dismissed in their entirety, with prejudice.

Material questions of fact prevent dismissal of plaintiff's Title VII gender-based discrimination claims relating to her demotion, and her NYHRL claims against individual defendant Trippe, and those claims may proceed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 31, 2022.